UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| INFINITY FLUIDS, CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GENERAL DYNAMICS LAND )<br>SYSTEMS, INC. )<br>)<br>Defendant. )<br>) | Civil Action No. 4:12-cv-40004-TSH |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL ARBITRATION AND DISMISS THIS ACTION**

**TABLE OF CONTENTS**

**Page**

I. FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

II. ARGUMENT ............................................................................................................ 4

    A. The Arbitration Clauses Are Enforceable Under the Federal Arbitration Act .. 4

    B. All of Infinity's Claims are Arbitrable and the Arbitration Clauses Encompass All of Infinity's Claims ................................................................................... 5

    C. Because Infinity's Claims Are Subject to a Mandatory Agreement to Arbitrate, the Court Should Dismiss This Action in its Entirety ....................... 9

III. CONCLUSION ........................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AT&T Tech., Inc. v. Communication Workers of Am.*,
   475 U.S. 643 (1986) ................................................................................................................9

*Bercovitch v. Baldwin School, Inc.*,
   133 F.3d 141 (1st Cir. 1998) ....................................................................................................9

*Dean Witter Reynolds v. Byrd*,
   470 U.S. 213 (1985) .............................................................................................................4, 5

*Hurlbut v. Gantshar*,
   674 F. Supp. 385 (D. Mass. 1987) .........................................................................................10

*Morse v. Sir Speedy, Inc.*,
   1997 WL 724434 (D. Mass. 1997) ........................................................................................10

*Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................................................................5

*Mugnano-Bornstein v. Crowell*,
   42 Mass. App. Ct. 347, 677 N.E.2d 242 (1997) .....................................................................5

*Newspaper Guild of Salem, Local 105 of Newspaper Guild v. Ottaway*
   *Newspapers, Inc.*,
   79 F.3d 1273 (1st Cir. 1996) ....................................................................................................5

*Next Step Medical Co., Inc. v. Johnson & Johnson Intl.*,
   619 F. 3d 67 (1st Cir. 2010) .....................................................................................................9

*Shearson/American Express, Inc. v. McMahon*,
   482 U.S. 220 (1987) ................................................................................................................5

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) ....................................................................................................................4

*Williams v. HealthAlliance Hospitals, Inc.*,
   158 F. Supp.2d 156 (D. Mass. 2001) .......................................................................................9

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 2, 3, and 4 ................................................................ *passim*

Defendant General Dynamics Land Systems, Inc. ("General Dynamics") hereby requests that this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, issue an order (1) compelling the plaintiff, Infinity Fluids, Corp. ("Infinity") to arbitrate each of the claims in its Complaint; and (2) dismissing Infinity's Complaint in its entirety.

As discussed in more detail below, two clear and unambiguous arbitration clauses in written agreements between the parties require that "all disputes" and "any and all claims" between them must be committed to binding arbitration, not proceedings in court. Despite entering into these written agreements, Infinity chose to file a state court complaint (since removed to this Court by General Dynamics) consisting of ten claims that relate directly to the subject-matter of the written agreements. Now, after receiving an arbitration demand from General Dynamics, Infinity has refused to submit this case to arbitration. Infinity has never explained (nor could it) why the mandatory arbitration provisions that it agreed to do not control here. As such, this Court should compel arbitration and dismiss Infinity's complaint.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In 2008, General Dynamics was working to develop and deliver seven prototypes of the Expeditionary Fighting Vehicle ("EFV") to the Marine Corps. EFVs were designed to be armored amphibious vehicles that would carry Marines in combat gear ashore and then fight like a tank. The EFV was designed to operate in extreme weather environments, including temperatures as cold as -25 F. To start the vehicle in such cold temperatures, the EFV was designed with an Auxiliary Power Unit ("APU"), located in a compartment on the side of the vehicle. In a "cold start" situation, the APU would warm the batteries and also warm up the primary engine coolant, so that coolant could flow properly through the EFV engine manifold. The portion of the APU intended to "warm

up" the coolant fluid in order to start the engine in cold weather was called the Supplemental Heating System, or "SHS." The SHS would be located in the APU compartment. In 2008, it was envisioned that a battery-powered "in line" heater assembly could be built to warm one of the tubes through which engine coolant flowed. The General Dynamics engineering team identified a vendor, Infinity, believed to be capable of designing a system that would meet the requirements of the SHS Inline Heater, and was willing to develop a small number of heating assemblies on a relatively short time schedule.

In May 2008, to facilitate the exchange of information between them, General Dynamics and Infinity entered into a Proprietary Data Agreement ("PDA"). Paragraph 15 included a mandatory arbitration clause, which provided in relevant part as follows:

> All disputes arising from or relating to this Agreement, with the sole exception of disputes regarding the creation or ownership of any and all intellectual property, shall be irrevocably submitted to arbitration, to be conducted in a mutually decide upon location, in accordance with the commercial arbitration rules of the American Arbitration Association then in effect.

PDA, ¶ 15. (Attached to the Declaration of Daniel M. Esrick ("Esrick Decl.") as Ex. A).[1] In February 2009, after reviewing Infinity's heater proposal, General Dynamics submitted purchase orders for seven heater assemblies as well as nonrecoverable engineering costs. These purchase orders included standard terms and conditions which, like the PDA, contained a mandatory arbitration clause providing (in relevant part) as follows:

> Any and all claims, disputes or other matters in question arising out of, or relating to, this Contract or the breach thereof shall be decided by arbitration in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association (the "AAA Rules").

---

[1] The Esrick Decl., with Exhibits A-D, is being filed concurrently with this Memorandum.

Purchase Order Terms and Conditions, ¶ 30.  (Esrick Decl., Ex. B).  Collectively, the arbitration provisions in the PDA and purchase order terms and conditions will be hereinafter referred to as the "Arbitration Clauses."

Despite General Dynamics' best efforts to work with Infinity, Infinity ultimately failed to deliver any heaters that met the specifications set forth in the purchase order.  As a result, General Dynamics put the heater project with Infinity on hold.  General Dynamics then conducted a two-year study to identify vendors who could provide heaters that met the EFV cold start requirements.  Infinity (and others) were invited to submit new bids.  Ultimately, General Dynamics selected a different vendor, Clayborn Labs, to provide the requested heater prototypes.  Clayborn Labs' flexible heater design was far different than Infinity's failed design, which was rigid and could not be bent to meet the required specifications.  Clayborn Labs' heater assembly was successfully tested and passed Critical Design Review in December 2011.  However, by that time, the Department of Defense had cancelled the EFV program; thus, no additional prototypes were built, nor are any scheduled to be built.

On December 29, 2011, Infinity filed a complaint against General Dynamics in the Worcester Superior Court alleging trade secret misrepresentation, breach of contract and related causes of action.  Each of the claims in the Complaint relate directly to the confidentiality obligations of the parties under the PDA, or are contract claims based on a purported breach of conditions of the purchase orders.  General Dynamics subsequently removed the case to this Court and answered the Complaint.

Relying on the Arbitration Clauses of Paragraph 15 of the PDA and Paragraph 30 of the purchase order terms and conditions, on February 24, 2013, General Dynamics

- 3 -

served an arbitration demand on Infinity. (Esrick Decl., Ex. C). Infinity responded by claiming, with no supporting authority, that this case should not be submitted to arbitration. *See* March 15, 2012 letter from Rajwani to Teran. (Esrick Decl., Ex. D).

In January of this year, the parties participated in a mediation session, which was unsuccessful. This motion followed.

## II.     ARGUMENT

### A.     The Arbitration Clauses Are Enforceable Under the Federal Arbitration Act.

The Federal Arbitration Act ("FAA") was enacted "to ensure judicial enforcement of privately made agreements to arbitrate[.]" *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (The FAA establishes a "strong national policy favoring arbitration."). Under Section 2 of the FAA, "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Here, the Arbitration Clauses are undeniably in writing and involve commerce, as the underlying PDA and the subsequent purchase orders relate to the manufacture and sale of goods. As such, the Arbitration Clauses are governed by the FAA. *See Mugnano-Bornstein v. Crowell*, 42 Mass. App. Ct. 347, 350, 677 N.E.2d 242, 245 (1997) ("Where an arbitration agreement falls within the purview of the FAA, the act governs the arbitrability of the dispute in State or Federal Court.").

Section 4 of the FAA grants "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" the right to

- 4 -

"petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Courts "rigorously enforce agreements to arbitrate" under the FAA. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). *See also Dean Witter,* 470 U.S. at 218 (FAA leaves no place for exercise of discretion by district court). Indeed, the FAA compels judicial enforcement of an arbitration agreement; *Newspaper Guild of Salem, Local 105 of Newspaper Guild v. Ottaway Newspapers, Inc.,* 79 F.3d 1273, 1279 (1st Cir. 1996) (parties must proceed with arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute") (quotations and citations omitted). Any doubt regarding the scope of arbitrable issues must be "resolved in favor or arbitration, whether the problem at hand is the construction of the contract language itself or an allegation or waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 (1983).

### B. All of Infinity's Claims are Arbitrable and the Arbitration Clauses Encompass All of Infinity's Claims.

The language of the parties' arbitration clause itself determines what issues the parties agreed to arbitrate. *See Moses,* 460 U.S. at 24-5. Here, both of the Arbitration Clauses are very broad. As set forth above, the Arbitration Clause in the PDA applies to "All disputes arising from or relating to this Agreement, with the sole exception of disputes regarding the creation or ownership of any and all intellectual property." (PDA, Para. 15). The Arbitration Clause in the Purchase Order Terms and Conditions is equally broad, including "[a]ny and all claims, disputes, or other matters in question arising out

- 5 -

of, or relating to, this Contract or the breach thereof . . . ."  (Purchase Order Terms and Conditions, Para. 30).

Although Infinity's Complaint contains ten causes of action, they each fall into one of two categories, both of which are covered by the broad Arbitration Clauses.  The first category relates to trade secrets and confidential information and flows directly from the parties' PDA, which governed the terms and conditions under which the parties were to share their respective confidential information.  As the chart shows below, seven of Infinity's ten claims relate to purported trade secrets and/or confidentiality issues, and therefore, "arise from or relat[e] to" the PDA because they allege that GDLS purportedly improperly used or shared Infinity's confidential information, which the PDA was executed to prevent.  *See* Complaint, ¶ 17 ("Infinity Fluids and GDLS entered into a proprietary data agreement in order to protect the exchange of confidential information between the parties.").

| CAUSE OF ACTION | RELEVANCE TO PDA |
| --- | --- |
| Count I (Misappropriation and Misuse of Trade Secret Information) (M.G.L. c. 93, Sec. 42) | "Upon information and belief, GDLS has taken, used, disclosed and/or otherwise misappropriated Infinity Fluids' confidential, proprietary, and trade secret information for its own use."  (Complaint, ¶ 65)<br><br>"Infinity Fluids has taken measures and made efforts that are reasonable under the circumstances, including entering into a proprietary data agreement with GDLS on May 8, 2008, to maintain the secrecy of the confidential, proprietary, and trade secret information that GDLS has misappropriated from Infinity Fluids."  (Complaint, ¶ 66). |
| Count II (Misappropriation of Confidential Information) | "Upon information and belief, GDLS has taken, used, disclosed and/or otherwise misappropriated Infinity Fluids' confidential, proprietary, and trade secret information for its own use through improper means, in breach of a confidential relationship."  (Complaint, ¶ 72)<br>"Infinity Fluids has taken measures and made efforts that |

- 6 -

| CAUSE OF ACTION | RELEVANCE TO PDA |
|---|---|
|  | are reasonable under the circumstances, including entering into a proprietary data agreement with GDLS on May 8, 2008, to maintain the secrecy of the confidential and proprietary information that GDLS has misappropriated from Infinity Fluids." (Complaint, ¶ 73). |
| Count III (Unfair Competition) (M.G.L. c. 93A, Sec. 11) | Referencing "GDLS's theft, use disclosure and/or misappropriation of Infinity Fluids' confidential, proprietary, and trade secret information." (Complaint, ¶ 76) |
| Count IV (Negligent Misrepresentation) (M.G.L. c. 93A, Sec. 11) | "GDLS . . . misrepresented . . . (i) its intentions in obtaining Infinity Fluids' confidential, proprietary, and trade secret information . . . ." (Complaint, ¶ 80) |
| Count V (Negligent Misrepresentation) | "GDLS . . . misrepresented its intentions in obtaining Infinity Fluids' confidential, proprietary, and trade secret information." (Complaint, ¶ 85) |
| Count IX (Fraudulent Misrepresentation) (M.G.L. c. 93A, Sec. 11) | "GDLS . . . made numerous representations of material fact to Infinity Fluids regarding . . . (iv) GDLS's maintenance of Infinity Fluids' proprietary information in confidence." (Complaint, ¶ 104) |
| Count X (Fraud and Deceit) | "GDLS . . . made numerous material representations to Infinity Fluids regarding . . . GDLS's maintenance of Infinity Fluids' proprietary information in confidence." (Complaint, ¶ 112) |

Given these repeated references in its Complaint to General Dynamics' purported misuse of Infinity's proprietary and confidential information, Infinity cannot credibly contend that the above claims do not "aris[e] from or relate to" the PDA.  As such, the Court should conclude that each of these claims is covered by the Arbitration Clause in the PDA.

The second category of claims in Infinity's Complaint are the contract claims, each of which ties directly to the Arbitration Clause in the Purchase Order Terms and Conditions, as the chart shows below.

- 7 -

ActiveUS 105795771v.2

| CAUSE OF ACTION | RELEVANCE TO PURCHASE ORDERS |
|---|---|
| Count VI (Breach of Contract) | "GDLS issued standard purchase orders for the manufacture of heaters and purchase of equipment for testing" and "breached its contract with Infinity Fluids by failing to pay the amounts owed to Infinity Fluids for the testing performed." (Complaint, ¶¶ 91 and 93). |
| Counts VII and VIII (Unjust Enrichment) | "GDLS has been unjustly enriched by the products and services provided to it by Infinity Fluids without just compensation." (Complaint, ¶¶ 97 and 101). |

These claims, therefore, "aris[e] out of or relate to" the Purchase Order Terms and Conditions, and should be referred to arbitration. *See also* Fed. Arb. Act., Sec. 2 (contract-based claims are arbitrable where, as here, the arbitration clause requires arbitration of contract claims).

Although it is clear that each of Infinity's claims are covered by the Arbitration Clauses, to the extent there is any ambiguity, it should be resolved in favor of arbitration. *See AT&T Tech., Inc. v. Communication Workers of Am.,* 475 U.S. 643, 650 (1986) (FAA creates the presumption that a contractual arbitration clause must be enforced unless "it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *Williams v. HealthAlliance Hospitals, Inc.*, 158 F. Supp.2d 156, 159 (D. Mass. 2001) ("[A]ny doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of arbitration"). This is particularly true where, as here, the Arbitration Agreements are broad enough to include all disputes arising from or relating to the relevant contracts. *AT&T Tech., Inc.*, 475 U.S. at 650 (internal citations omitted) ("In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we

think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'").

### C. Because Infinity's Claims Are Subject to a Mandatory Agreement to Arbitrate, the Court Should Dismiss This Action in its Entirety.

"[A] court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable." *Bercovitch v. Baldwin School, In*c., 133 F.3d 141, 156 n.21 (1st Cir. 1998) (dismissal of entire action proper where all claims are subject to arbitration); *Next Step Medical Co., Inc. v. Johnson & Johnson Intl.*, 619 F. 3d 67, 71 (1st Cir. 2010) ("Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if *all* claims asserted in the case are found arbitrable.") (emphasis in original); *Morse v. Sir Speedy, Inc.*, 1997 WL 724434, at *1-2 (D. Mass. 1997) (dismissing complaint where claim was subject to arbitration clause); *Hurlbut v. Gantshar*, 674 F. Supp. 385, 392 (D. Mass. 1987) (dismissing action where all claims arbitrable). As described above, because *all* of Infinity's claims are covered by the Arbitration Agreements, dismissal of Infinity's Complaint in its entirety is appropriate here.[2]

### III. CONCLUSION

For the foregoing reasons, General Dynamics respectfully requests that the Court issue an order compelling arbitration and dismissing Infinity's Complaint in its entirety.

---

[2] Although Section 3 of the FAA requires that other proceedings be stayed while a dispute subject to arbitration is resolved through arbitration (*see* 9 U.S.C. § 3), there is no reason to stay this case pending completion of the arbitration because all claims will be resolved through arbitration. General Dynamics assumes that Infinity would comply with an arbitration decision. However, in the unlikely event that it is necessary to ask a court to enforce the arbitration decision, a new suit could be filed at that time for that limited purpose.

Respectfully submitted,

GENERAL DYNAMICS LAND SYSTEMS, INC.,

By its attorneys,

/s/ Gregory P. Teran_____
Gregory P. Teran, Esq. (BBO #643402)
Daniel M. Esrick, Esq. (BBO #647676)
Wilmer Cutler Pickering Hale and Dorr LLP
Boston, MA 02109
Phone: (617) 526-6000
Fax:  (617) 526-5000
Email:  gregory.teran@wilmerhale.com
Email:  daniel.esrick@wilmerhale.com

/s/ John O. Mirick_____
John O. Mirick, Esq. (BBO #349240)
Michael R. Christy, Esq.  (BBO #659104)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone:  (508) 791-8500
Fax:  (508) 791-8502
Email:  jmirick@mirickoconnell.com
Email:  mchristy@mirickoconnell

Dated:   February 25, 2013

## CERTIFICATE OF SERVICE

I, Gregory P. Teran, hereby certify that on February 25, 2013, the foregoing document was served electronically on all counsel of record via the Court's electronic filing system.

/s/ Gregory P. Teran\_\_\_\_
Gregory P. Teran